```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA   )
            Plaintiff      )
                           )   Cr.# 04-10111-MEL
      v.                   )
                           )
COREY SMITH                )
            Defendant      )
_____   )
```

**REPLY TO THE GOVERNMENT'S SENTENCING MEMORANDUM**

Simply stated, the Government's Sentencing Memorandum demands a reply.  Not only does it unethically refer to uncharged conduct that is not supported by probable cause or **any** admissible evidence, but it also seeks to continue this government's racist prosecutorial policy of imprisoning young African-American men for outrageous periods of time.  That is wrong!

Massachusetts Rule of Professional Conduct 3.8(a) (the special responsibilities of a prosecutor) requires that the prosecutor "refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause."  Contrary to that ethical rule, the Government asks this Honorable Court to sentence (by way of its sentencing memorandum prosecution, pages 3-6) Mr. SMITH because he "is **suspected** of having committed murder."  The Government supports this outrageous and unethical assertion with the following: "The Boston Police Homicide Squad credits the information provided by the confidential source and, apparently is not alone in believing that Mr. Smith was involved in the Tavares homicide" the Boston

1

Police Youth Violence Strike Force concurs based on unnamed persons allegedly "associated" with Mr. SMITH who allegedly called him "C-murder" and "Killer."  Such bold assertions that are **devoid of any basis in fact** must be ignored.  Even the magistrate who heard this same outrageous and unsupported information at the detention hearing released Mr. SMITH.

Equally, disparate and harsh crack cocaine sentences, which are overwhelmingly prosecuted against African Americans,[1] and based on the 100 to 1 differential between powder and crack cocaine, are well recognized not only in legal opinions and scholarship, see e.g., United States v. Clary, reversed, 34 F.3d 709 (8th Cir 1994), cert. denied 130 L. Ed. 2d 1126 (1995; United States v. Dumas, 64 F.3d 1427, 1432 (9th Cir. 1995)("**the invidious racial effects are so arbitrary and capricious**...") (Boochever, J concurring), but has been brought before the United Nations as a human right's violation.[2]  See generally, Dvorak, Cracking the Code: "De-coding" Colorblind Slurs During the Congressional Crack Cocaine Debates, 5 Mich. J. Race & L. 611 (2000);  Cole, The Paradox of Race and Crime: A Comment On Randall Kennedy's "Politics of Distinction". 83 Geo. L.J. 2547 (1995); Note: Indeterminate Sentencing: an Analysis of Sentencing in America, 70 S. Cal. L. Rev. 1717 (1997).

Even the United States Sentencing Commission three times recommended to Congress to change the statutory framework to

---

[1] African Americans total approximately 85% of all those charged with "crack" offenses, see 2002 Report to Congress cited herein; all minorities total over 93% of crack cases prosecuted.

[2] See attached Exhibit B

address the unfairness of the disparate treatment of crack cocaine offenders. See <u>Report to Congress: Cocaine and Federal Sentencing Policy</u> (2002)(discussing that: "to the extent that the preceding analysis has shown that the 100-to-1 drug quantity ratio results in unduly severe penalties for most crack cocaine offenders, **the effects of that severity fall primarily on black offenders**." *emphasis added);* <u>Special Report to the Congress: Cocaine and Federal Sentencing Policy- April 29, 1997</u> (noting the "**disproportionate impact that the more severe crack penalties have had on African-American defendants**" and concluding, among other things, that the five gram of crack mandatory minimum is reflective of only street level and not mid-level or serious dealers and thus the amount should be increased to between 25 and 75 grams, <u>id.</u> at 1-2).

Equal protection is violated when the decision to prosecute is based on impermissible factors such as race, <u>Wayte v. United States</u>, 470 U.S. 598, 609 (1984). A defendant must prove however, not only discriminatory effect but discriminatory intent or purpose. <u>Id.</u> In <u>United States v. Tuitt</u>, 68 F. Supp. 2d 4, 8-9 (D. Mass. 1999), the defense compiled statistics for seeking, discovery on crack cocaine disparity, however those statistics failed to raise to the level necessary for a dismissal based on selective prosecution. See <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996)(to prove discriminatory effect claimant must show similarly situated individuals of a different race were not prosecuted; to show discriminatory intent, claimant must show government

3

pursued course for a forbidden reason, such as its adverse effects on an identifiable group). See also United States v. Daniels,142 F. Supp. 2d 140, 143-44 (D.C. Mass. 2001).

Mr. SMITH respectfully submits that these standards need not be met when the disparate impact is not explainable on any other grounds but race. See e.g. Yick Wo v. Hopkins, 118 U.S. 356 (1886); Gomillion v. Lightfoot, 364 U.S. 339 (1960). Justice Stevens, concurring in Washington v. Davis, 426 U.S. 229, 253 (1976) reasoned that:

> Frequently the most probative evidence of intent will be objective evidence of what actually happened rather than evidence describing the subjective state of mind of the actor. For normally the actor is presumed to have intended the natural consequences of his deeds. This is particularly true in the case of governmental action which is frequently the product of compromise, of collective decision making, and of mixed motivation. It is unrealistic, on the one hand, to require the victim of alleged discrimination to uncover the actual subjective intent of the decision maker or, conversely, to invalidate otherwise legitimate action simply because an improper motive affected the deliberation of a participant in the decisional process.

Mr. SMITH acknowledges the First Circuit's holding in United States v. Singleterry, 29 F.3d 733, 741 (1st Cir. 1994) that there are "plausible" legislative reasons, rather than racially motivated intent, for the crack-powder disparity but the court therein noted that: while defendant "has not established a constitutional violation, he has raised important questions about the efficacy and fairness of our current sentencing policies for offenses involving cocaine substances." See also United States v. Eirby, 262 F.3d 31, 41 (1st Cir.

4

2002)(following the Singleterry holding but noting that: "although we recognize the severity of the penalty paradigm vis-a-vis crack cocaine we must uphold it" [based on Circuit precedent]).  In the case at bar, the addition of the 21 U.S.C. § 851 Information changes the framework and distinguishes those cases from the instant one because it brings into question government policies that increase potential crack sentences **to life** for low-level street dealers.

Post Singleterry, the Sentencing Commission issued the above referenced reports to Congress critical of the rational for a federal prosecution and sentencing policy that targets usually state controlled street level crime rather than serious dealers. The reports carefully addressed the perception and application of unfair treatment for defendants convicted of either possession or distribution of crack cocaine.  The Commission repeatedly emphasized that "sentences appear to be harsher and more severe for racial minorities than others as a result of this law. The current penalty structure results in a perception of unfairness and inconsistency," 1997 Report at 8. Therefore, the government's current application of the crack cocaine law by targeting racial minorities in urban housing developments, including street level dealers, hardly provides the "plausible" reason for the disparity found in Singleterry; it is plainly and simply evidence of invidious racism.

Mr. SMITH, therefore, respectfully requests that the Government's unsupported assertions be ignored, that its disparate treatment of African-American offenders be considered and that Mr. SMITH be sentenced to probation for a term of 4 years with a condition thereof that he serve a year and a day in a CTC with credit for time served.

Date: April 16, 2005          Respectfully submitted,

                                             COREY SMITH,
                                             By his attorney,

                                             *s/Michael C. Bourbeau*
_____Michael C. Bourbeau (BBO #545908)
                                             Bourbeau and Bonilla
                                             77 Central St, 2nd Floor
                                             Boston, MA 02109
                                             (617) 350-6565