```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


_____
UNITED STATES OF AMERICA    )
                            )
                            )
                            )
         v.                 )    CRIMINAL NO. 04-10111-MEL
                            )
                            )
                            )
COREY SMITH,                )
                            )
     Defendant.             )
_____)
```

## DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE

Defendant Corey Smith hereby submits this Sentencing Memorandum and moves for a downward departure pursuant to U.S.S.G. §4A1.3 on the ground that defendant's criminal history category significantly over-represents the seriousness of his criminal history or the likelihood that he will commit further crimes.

### Statement of the Case

On January 3, 2005, defendant pleaded guilty to six counts of distributing crack cocaine in October and November of 2003, five of which took place took place near a school or playground, and one count of conspiring to distribute crack cocaine in November, 2003. There was no plea agreement.

On April 19, 2005, this Court sentenced defendant to a term of imprisonment of 46 months, to be followed by six years of

supervised release, and recommended that defendant participate in the 500 hour intensive drug treatment program while in prison. Although the Court accepted the Probation Department's calculation of an advisory guideline sentencing range of 100 to 125 months based on an offense level of 25 and a criminal history category of V, it nevertheless concluded that the sentence imposed satisfied the requirements of 18 U.S.C. §3553(a) that is "be sufficient to take into consideration the seriousness of the offense, the protection of society, [defendant's] own needs to improve and make sure the sentence is sufficient but not excessive, and bearing in mind that the Probation Department concludes that in accordance with the statute, a sentence substantially below the guidelines is appropriate."

In explaining the sentence, the Court noted the defendant's youth and his ability to turn his life around. While acknowledging the serious nature of the aggravated offense of selling cocaine close to a school, it recognized that defendant was only involved in the offense for a limited period of time, and he did not appear to be a leader in the offenses. The Court's belief that defendant's substance abuse played an important role in the offense and that he had the potential to turn his life around were significant considerations in the sentence. The Court noted that it appeared that defendant had committed the crimes in order to support his drug habit, and

that, while on pretrial release he had participated in drug abuse treatment for which, for the most part, he received positive reports and he had been gainfully employed. The Court also indicated that it was imposing a similar sentence to those imposed on his co-defendants, for whom Probation had also recommended sentences below the guidelines.

On the government's appeal, the First Circuit vacated the sentence and remanded for resentencing consistent with its decision. United States v. Smith, 445 F.3d 1 (1st Cir. 2006) The Court of Appeals rejected the government's arguments that this Court had committed legal error because some of the factors it relied upon – such as age, drug use, lack of leadership, and post-offense rehabilitation – are either discouraged or prohibited bases for departure under the sentencing guidelines and circuit precedent. Id. at 4. According to the Court of Appeals: "That a factor is discouraged or forbidden under the guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the guidelines. The guidelines – being advisory – are no longer decisive as to factors any more than as to results." Id. at 5. The Court of Appeals also rejected the government's argument that the evidence did not support this Court's rationale, holding that "we do not think that the district court made any clear error as to underlying fact warranting a remand." Ibid.

It did, however, find that a sentence of less than half the minimum guideline range to be "plainly unreasonable" because "the offense is quite serious and the defendant's record unpromising, and there are no developed findings to indicate that rehabilitation is a better prospect than usual." Id. at 7. In remanding, the Court noted that: "Framing a new sentence after any proceedings deemed appropriate is, in the first instance, the responsibility of the district judge." Ibid.

### **Statement of Facts**

At the time of the offenses to which he pleaded guilty, defendant was 21 years old. He was born in Boston and raised by his unmarried parents until they separated when he was 3 years old. Thereafter, he was raised by his father but saw his mother regularly. Although he has one paternal half-brother and seven paternal half-siblings, he has never had a significant relationship with any of them. PSR ¶¶92, 96, 97.

Defendant's abuse of alcohol and marijuana began when he was approximately 15 years old (1997) and increased to the point that he was smoking marijuana 10 to 20 times a day (which he estimated to be 1.5 ounces per week), and drinking 4 to 5 times per week. In 2000, at the age of 18, he began using ecstasy, and would take approximately 2 pills every weekend before going out. ¶¶104-106.

At the age of 16, defendant was adjudicated a delinquent and placed on probation for one year on a charge of receiving stolen

property.  PSR ¶69.  Two years later, at the age of 18, he was placed on pretrial probation on two occasions on charges of receiving stolen motor vehicles; but he was later found guilty of each of these charges after violating the conditions of his probation and was given concurrent 2 year suspended sentences in the House of Correction on each charge.  PSR ¶¶70, 71.  While still 18, defendant was convicted of receiving a stolen license plate and given a 10 day committed sentence.  PSR ¶72.  Several months later, after turning 19, defendant was convicted of attaching wrong plates to a motor vehicle and sentenced to 10 days to run concurrent with the other 10 day sentence.  PSR ¶73.  Later this same year, defendant was again convicted of receiving stolen property involving a motor vehicle and attaching wrong plates and sentenced to 90 days and 10 days in the House of Correction, respectively.  PSR ¶74.

In December, 2002, at the age of 20, defendant was convicted of receiving stolen license plates, operating a motor vehicle after suspension of license, and possession of marijuana with intent to distribute.  He was sentenced to 2 years in the House of Correction, two months deemed served and the balance suspended, on the possession with intent to distribute charge, 30 days deemed served on the operating after suspension charge, and 10 days deemed served for attaching wrong plates.  As a result of violating the terms of his probation, a one year committed

sentence was imposed.  PSR ¶75.

Shortly before defendant's probation was revoked in January, 2003, he suffered a gunshot wound in the chest in a drive-by shooting incident.  He was hospitalized with a collapsed lung and two shattered ribs and, as a result, he experiences shortness of breath and chest pain, he has difficulty walking up stairs, and he experiences numbness in his arm and chest 2 to 3 times a week.  PSR ¶101.

After defendant's arrest on April 15, 2004, he was released to the six month in-patient drug treatment program at Spectrum House on April 28, 2004.  According to Pretrial Services, defendant successfully completed the program, during which he received the "Most Improved Client of the Month" award, and the staff noted that he was motivated and had demonstrated positive behavioral changes.  PSR ¶107.  On January 6, 2005, at his request, defendant was transferred to the re-entry program and moved to a sober house run by South Middlesex Opportunity Council.  However, because he was behind in his rent, not performing his chores, and had stayed out for two days without authorization, defendant's conditional pretrial release was revoked on February 3, 2005, and he was detained until sentence was imposed on April 19, 2005.  PSR ¶106.

Since his transfer to the FCI Ray Brook in June of 2005, defendant has made good on his promise to the Court at sentencing

that he would achieve his goals, and he has fully justified the Court's confidence that he would turn his life around. His institutional record has been flawless; he has participated in all programs for which he is eligible and he has had no disciplinary infractions. As a result of educational classes he began taking as soon as he arrived in Raybrook, he obtained his G.E.D. in October, 2005 (Exhibit A). Thereafter, he successfully completed a 40 hour drug abuse education program, for which he received a certificate (Exhibit B) and, while awaiting a transfer to the minimum security prison camp, he participated in a job fair and began taking a business class on how to become an entrepreneur. In April, 2006, defendant was transferred to the camp at FCI McKean and he began the intensive 500 hour drug treatment program in June. During the entire period of his incarceration, he has worked at various jobs at both institutions.

**DEFENDANT SHOULD BE GRANTED A DOWNWARD DEPARTURE BECAUSE HIS CRIMINAL HISTORY CATEGORY OVER-REPRESENTS THE SERIOUSNESS OF HIS CRIMINAL HISTORY OR THE LIKELIHOOD <u>THAT HE WILL COMMIT FURTHER CRIMES</u>**

**A. <u>Legal Standard</u>**

Section 4A1.3 of the advisory federal sentencing guidelines permits a downward departure where "reliable information" indicates that a defendant's criminal history category "significantly over-represents the seriousness of a defendant's

criminal history or the likelihood that the defendant will commit further crimes." Unlike Chapter 5 departures, "the court need not determine that some unusual or extraordinary factor justifies a criminal history departure under §4A1.3." United States v. Hammond, 240 F.Supp. 872, 875-876 (E.D. Wis. 2003). Recognizing the inherent limitations in a mathematical approach to criminal history that is "unlikely to take into account all the variations in the seriousness of criminal history that may occur," U.S.S.G. §4A1.3 (background commentary), the Commission has provided courts with specific authority to make adjustments in the criminal history category based only on "reliable information." Hammond, 240 F.Supp. 2d at 876. Thus, because §4A1.3 is specifically provided for in the Guidelines, it is "conceptually distinct from the provision in §5K2.0 for departures based on factors not accounted for in the Guidelines." United States v. Shoupe, 988 F.2d 440, 442 (3d Cir. 1993). It permits a court "to put the defendant's record in the context of his life and background." United States v. Wilkerson, 183 F.Supp.2d 373, 380 (D. Mass. 2002). Indeed, §4A1.3 departures are "encouraged departures" under Koon v. United States, 518 U.S. 81 (1996). Ibid.; see also Hammond, 240 F.Supp.2d at 876.

### B. Defendant's Criminal History Does Not Accurately Reflect The Relatively Minor Nature of His Record.

The Presentence Report calculates that defendant is in criminal history category V as a result of having accumulated a

total of 11 criminal history points between the ages of 16 and 21 on the basis of one juvenile adjudication, six convictions, and the fact that the instant offense was committed less than two years following his release from custody.

Nevertheless, the nature and circumstances of the crimes of which defendant was convicted are completely inconsistent with such a serious designation.  Defendant has an essentially non-violent record of minor property crimes that were clearly prompted by his immature fascination with cars (see PSR ¶109) and the need to support his addiction to marijuana.  Thus, 9 of defendant's criminal history points are the result of one juvenile adjudication and five convictions for receiving stolen property, two of which involved cars and three involved only license plates. (PSR ¶¶69-74)  For most of these convictions defendant was given probation or a suspended sentence; and he was given committed sentences of 10 days for others and 90 days for one.  One conviction was for possession of marijuana with intent to distribute (even though defendant was only found to be in possession of one bag of marijuana) in addition to receiving stolen license plates, for which he was sentenced to two years, with 60 days time deemed served and the balance suspended. (PSR ¶75) Defendant was committed to serve one year of this sentence after violating his probation.  The remaining two criminal history points resulted from the commission of the instant

offense less than two years after defendant was released from this commitment. All of defendant's criminal history points, therefore, resulted from receiving stolen property and one drug offense involving marijauna for which, as the Probation Department has noted, he has never served more than a year for a violation of probation. See Sentencing Recommendation, p. 2.

Under very similar circumstances, one court granted a downward departure from a Category VI to a Category III where the defendant "had no history of violent behavior [and his] prior arrests resulted from minor drug crimes involving facilitation of the sale of drugs and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of narcotics." United States v. Hammond, 37 F.Supp.2d 204, 205 (E.D. N.Y) See also United States v. Lacy, 99 F.Supp.2d 108, 119 (D. Mass. 2000)(departing from a career offender Category VI to a Category III where defendant's record was "largely non-violent and relatively minor, the kind that characterizes an out-of-control addict."); United States v. Abbott, 30 F.3d 70, 72-73 (7th Cir. 1994)(remanding for consideration of a downward departure pursuant to §4A1.3 on the basis of the defendant's argument that his prior convictions were for "petty crimes related to his substance abuse.") As in United States v. Leviner, 31 F.Supp.2d 23, 34 (D. Mass. 1998), where the court departed downward from a Category V to a Category III, defendant's

succession of non-violent offenses and minor drug possession charges "suggest someone whose drug problems had never been addressed in the past and thus he continued to re-offend." See also United States v. Wilkerson, 183 F.Supp.2d 373, 380 (D. Mass. 2002)(departing downward from criminal history category VI to IV where defendants convictions occurred between ages 17 and 22, were non-violent, and mostly involved drug, property and motor vehicle offenses).

It would, therefore, be inconsistent with the Advisory Guidelines' purpose of assessing culpability and predicting the likelihood of recidivism to put defendant in the category of nearly the most serious offender who presents a great threat to society.  As one court noted, to treat a person with a succession of minor offenses for which short jail sentences were imposed in the same way as someone with multiple, violent crimes and lengthy prison   sentences, "would create a new form of disparity, treating offenders that are completely different in a like way." Leviner, 31 F.Supp.2d at 33.

Particularly where, as in the present case, it appears that defendant has been drug-free for the two and one-half years since his arrest, during which time he has successfully participated in a pretrial drug treatment program, and he is presently participating in an intensive drug treatment program while serving his sentence, "the court may conclude that counting the

11

offenses committed while suffering the effects of addiction . . . results in an overstatement of the seriousness of his criminal history or the likelihood that he will repeat his crimes." <u>United States v. Hammond</u>, 240 F.Supp.2d 872, 878 (E.D. Wis. 2003).

Finally, as a result of the remand for resentencing this Court is "free to consider a downward departure for any legitimate reason." <u>United States v. Maldonado</u>, 242 F.3d 1, 4 (1st Cir. 2001). In remanding, the Court of Appeals did not limit the scope of the resentencing, and left the framing of the sentence to the discretion of the district judge consistent with its decision. Although that decision did discuss and comment on defendant's criminal history, it did not specifically consider whether it over-represented its seriousness or the likelihood that defendant will commit further crimes. Under all the circumstances, therefore, defendant submits that it would be appropriate for this Court to depart downward from a criminal history category of V to a criminal history category of III, resulting in a sentencing range of 70-87 months at an offense level of 25.

**A SENTENCE OF 60 MONTHS WOULD BE SUFFICIENT BUT NO GREATER THAN NECESSARY TO COMPLY WITH <u>THE PURPOSES SET FORTH IN 18 U.S.C. §3553(a)</u>**

While the Court of Appeals concluded that the original sentence of 46 months was unreasonable, defendant submits that a

sentence of 60 months, the sentence originally recommended by the Probation Department, would not be unreasonable, particularly in light of defendant's significant post-sentence rehabilitation and the downward departure discussed above.  While the Court of Appeals stated that at the time of sentencing there was nothing "to indicate that rehabilitation is a better prospect than usual," United States v. Smith, 445 F.3d at 7, the evidence of defendant's success in his education, drug treatment and employment during the 18 months since the imposition of the sentence has demonstrated that he has made good on the Court's belief that he was a better than usual candidate for rehabilitation and certainly justifies a sentence substantially below the guidelines.  This success, moreover, shows the prescience of the Probation Officer who based her recommendation, in part, upon the fact that "defendant presented with a certain intelligence and respectfulness that many other defendants, particularly similarly situated defendants, do not."  Sentencing Recommendation, p. 2.

## Conclusion

For the foregoing reasons, defendant's motion for a downward departure should be granted and the Court should depart from a criminal history category V to a Criminal History Category III pursuant to §4A1.3.  The Court should also impose a below guidelines sentence of 60 months on the grounds that such a

sentence is not greater than necessary to satisfy the purposes of 18 U.S.C. §3553(a).

                                                Respectfully submitted,

                                                /s/ *Jonathan Shapiro*
                                                Jonathan Shapiro
                                                BBO No. 454220
                                                Stern, Shapiro, Weissberg
                                                 & Garin, LLP
                                                90 Canal Street
                                                Boston, MA 02114-2022
                                                617-742-5800

Dated: October 16, 2005